UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| KRISTEN BRINKERHOFF, individually and on behalf of all persons similarly situated, | : : : : | CIVIL ACTION NO. 3:20-cv-00163 |
| Plaintiff, | : : | |
| v. | : : : | |
| EVENFLO COMPANY, INC., | : : | CLASS ACTION COMPLAINT |
| Defendant. | : | JURY TRIAL DEMANDED |

Plaintiff, by her counsel, on behalf of herself and all others similarly situated, brings this proposed class action based upon personal knowledge as to the facts particular to plaintiff, and as to all other allegations, based upon the investigation of counsel. Counsel's investigation includes, *inter alia*, a review of government publications and notices, scholarly articles, press reports and investigations, records from other proceedings, including court proceedings, and other pertinent materials. Plaintiff believes, and therefore avers, that discovery will reveal substantial, additional factual support for the allegations and claims set forth herein.

## GENESIS OF THIS LITIGATION

1.      No parent or caretaker of an infant or young child has a greater or more pressing concern than ensuring the health and safety of his or her child. This action has its genesis in Defendant's decision to place profits over children's safety concerning a product designed, manufactured, marketed and sold to appeal to parents' and caretakers' concern for safely transporting vulnerable infants and children and protecting them from serious injury, or even death.

2.      The product in question – Evenflo's "Big Kid" car booster seat, which was sold to over 18 million consumers – was manufactured, marketed and sold to parents and other caretakers

with an eye to obtain a competitive advantage over competitor Graco and other car seat manufacturers.

## The Question of Car Seat Safety

3. Defendant Evenflo Company, Inc. ("Evenflo," "the Company," or "Defendant"), sought to persuade parents and caretakers that it was safe to move their children from car seats that provided a greater level of protection to Evenflo's "Big Kid" car booster seat, even though its "Big Kid" booster seat had no integrated five-point harness, and despite Evenflo's own internal document noting the "Prevailing Wisdom" that "5pt Harnesses are best practice" and that parents should "Keep your Child in a 5pt harness up to Max[imum] weight rating of the seat." *See Somoza v. Abbot,* Case No. 16-2015-CA-001596, Docket Entry 588, Plaintiffs' Exhibit 333.004 (Fla. 4th Judicial Cir. July 15, 2018), attached as Exhibit A to this Complaint.  Evenflo did this by seeking to convince parents and caretakers – despite the small size or young age of their children – that this booster seat was designed, manufactured and tested to ensure the child's safety in the event of an automobile collision.

4. Evenflo cynically reasoned in its internal corporate communications:

The target market for belt positioning booster seats are mothers of children 3-6 years old.

\*\*\*

Mothers feel they are forced into buying car seats and the[y] see the purchase as overwhelming and complicated.  Safety, ease of use and need to be visible at the time of purchase.  Few do any research on the topic.  Because all seats have to meet Federal safety standards, most moms feel that all seats have relatively the same level of safety.

\*\*\*

Moms expect that the Booster seats are safe and meet all Federal safety requirements.  They trust that their child will be protected in the seat.

*See Somoza v. Abbot*, Docket Entry 583, Plaintiffs' Exhibit 61.3, attached as Exhibit B.

5.      Moreover, the July 2010 Report of the National Highway Traffic Safety Administration of the U.S. Department of Transportation ("NHTSA 2010 Report"), which was based upon statistical analyses of data going back to 1998 and 17 years of combined data from three states, found "among 3- and 4-year-olds there is evidence of increased risk of injury when restrained in booster seats rather than with the recommended child restraints.  This increase depends on injury severity, and may be as large as 27 percent for non-disabling to fatal injuries." The NHTSA 2010 Report presciently warned in language that proved directly relevant to the Evenflo "Big Kid" booster seats, "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs.  ***Early graduation from child restraint seats (CRS) to booster seats may also present safety risks.  Child restraint seats may offer more lateral support and better containment for smaller children***."[1]  The NHTSA 2010 Report also emphasized the significance of a difference in recommendations for 3- versus 4-year old passengers, explaining:

> The results for any type of injury show a large difference between the 3- and 4-year olds, with the older children showing almost no difference in injury rate between the two restraint types and the 3-year olds showing a 15-percent reduction …. The results for any type of injury support the recommendation for graduation at 4 years or about 40 pounds in general, ***although it may be the case that more severe injuries are better prevented by CRS even at 4 years old***.

*Booster Seat Effectiveness Estimates Based On CDS and State Data*, NHTSA July 2010 Report, attached as Exhibit C.

6.      The following year the American Academy of Pediatrics ("AAP"), the principal professional organization of the nation's pediatricians, and NHTSA jointly issued updated standards for best practices in child restraint systems.  For children between the ages of 4 to 7, NHTSA recommended, "Keep your child in a forward-facing seat ***with a harness*** until he or she

---

[1] Unless otherwise noted, all emphases are added.

reaches the top height or weight limit allowed by your car seat's manufacturer.  Once your child outgrows the forward-facing car seat **with a harness**, it's time to travel in a booster seat, but still in the back seat." *NHTSA Car Seat Recommendations for Children* (March 21, 2011), and *2011 American Academy of Pediatrics Updates Recommendation On Car Seats*, together attached as Exhibit D.  Ironically, Evenflo issued a press release stating *"Evenflo Supports the Updated Car Seat Recommendations by the American Academy of Pediatrics,"* attached as Exhibit E.

### The Danger of Side-Impact Collisions

7.      In considering the issue of safety, one of the most dangerous situations, accounting for as much as 25% of all automobile fatalities involving children under 15, is a side-impact collision in which the steel beam in the car's door provides the only resistance to the other vehicle's direct impact.

8.      Defendant designed, manufactured, marketed and sold the "Big Kid" booster seat knowing that, by design, it provided inadequate protection from a side-impact collision, but hid that crucial flaw from trusting parents by prominently claiming on its website, product packaging and brochures, and on the product itself (*see* paragraph 24, below) that it was tested – and presumably passed the test – for side-impact collisions pursuant to standards that were twice as demanding as the government's standard.

9.      The reality was that, as a result of industry opposition or bureaucratic delay, no side impact standards had ever been adopted by the federal government for child car or booster seats, even though their adoption was mandated by statute 20 years ago.  As a result, the "tests" – which Defendant claimed on its website were twice as rigorous as these non-existent standards – were designed by Defendant itself, and there was no government standard against which to provide any reference point for the determination of side-impact testing.  And in what may constitute its most

self-serving action, Defendant gave itself a "passing" grade in meeting this "doubly rigorous" standard, by secretly setting the standard for securing a "passing grade" on any test to merely require that the test dummies not be ***completely*** ejected from the seat or that the seat itself did not end up broken into multiple pieces. Yet as outside experts and Defendant's own employees admitted, these side-impact collisions could cause serious, catastrophic injury, or even death to their vulnerable passengers.

10.    The truth, as borne out by Evenflo's secret testing and as confirmed in personal injury litigation brought after very young passengers using the "Big Kid" booster seats, which did not incorporate a five-point harness as part of the booster seat, were traumatically injured, is that the "Big Kid" booster seats were not safe and placed children at unnecessary risk of severe injury or death. Moreover, both the tests and the testimony of Defendant's own employees – which until now have been largely concealed from consumers – demonstrate that Evenflo was repeatedly warned that the seats were not safe. Nevertheless, Evenflo knowingly, but improperly, marketed these seats as safe for children who were as young as one-year-old or as small as 30 pounds, when Defendant knew that, in the event of foreseeable side-impact collisions, children would have been better protected if they had remained in seats with a built-in five-point harness.

11.    Even after its own testing results and secret deposition testimony confirmed to Evenflo the existence of these serious dangers associated with the "Big Kid" booster seats, Evenflo further aggravated the problem by failing to inform consumers – who had previously purchased these booster seats based upon Evenflo's representations that the booster seats were side-impact tested – that they posed a risk of grievous injury or death in side-impact collisions and should not be used. Evenflo was clearly aware of the identity of "Big Kid" booster seat purchasers since many consumers filled out warranty cards registering their names and addresses with Defendant,

which enabled it to warn past purchasers of the "Big Kid" booster seats as evidence mounted of the dangers associated with these seats. Indeed, Evenflo included a statement on the booster seats themselves, which stated in pertinent part:

> You must register this restraint to be reached in a recall. Send your name, address, email address if available, and the restraint's model number and manufacturing date to Evenflo Company, Inc., 1801 Commerce Dr., Piqua, OH 45356 or call 1-800-233-5921 or register online at *www.evenflo.com/registercarseat*.

But Defendant chose to remain silent, favoring profits over child safety.

12.     Plaintiff now seeks to secure compensation, for herself and all members of the proposed classes, for Defendant's false and misleading statements that induced them to purchase and continue to use these unsafe products. Plaintiff also seeks to obtain appropriate equitable relief to protect all class members from unknowingly continuing to use these defective products.

## PARTIES AND JURISDICTION

13.     Plaintiff Kristen Brinkerhoff was, at the time of the purchase of the "Big Kid" booster seat, a citizen of the State of California, residing in San Diego, California. Plaintiff Brinkerhoff purchased two "Big Kid" booster seats in 2017 and 2019, respectively.

14.     Defendant Evenflo is a corporation organized under the laws of Delaware, and maintains its principal place of business in Miamisburg, Ohio in this District. Evenflo is a subsidiary of Goodbaby International Holdings Ltd., which acquired Evenflo in June 2014, and which in January 2017 announced the hiring of a new CEO, John Chamberlain, for Evenflo.

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy is in excess of five million dollars ($5,000,000.00), exclusive of interests and costs, and because this is a proposed class action representing over 100 putative class members and minimal diversity exists between Plaintiff and Defendant. This Court has subject matter

jurisdiction to decide claims brought under 15 U.S.C. § 2301 pursuant to 28 U.S.C. § 1332(a)-(d).  This Court also has supplemental jurisdiction over all state law causes of action pursuant to 28 U.S.C. § 1367.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Evenflo is a resident of this District and engaged in actions within this District that contributed to and give rise to this action.

## FACTUAL ALLEGATIONS

17.    Organizations dedicated to childhood health, such as the AAP, have stated that parents should follow a recognized series of steps in the selection of appropriate car seats and booster seats, based, in part, upon the child's age and size:

    a.    Every child should begin with a rear-facing car seat;

    b.    Only after the child reaches the top height or weight limit for a rear-facing car seat, should the child be switched to a forward-facing car seat with a harness;

    c.    Only after the child exceeds the top weight or height limitation of a forward-facing car seat (and many seats can accommodate children up to 65 pounds or more), should the child switch to a booster seat.

*See Car Seats: Information for Families,* www.HealthyChildren.org (a publication of the AAP), attached as Exhibit F.

18.    In fact, since the early 2000s, the AAP has advised that children who weigh 40 pounds or less were best protected in a seat with its own internal harness.  And, as noted above, in 2011, the AAP made a further safety determination that children should be placed in rear-facing child safety seats for as long as possible before moving them to forward-facing harnessed seats,

and that it was no longer ideal to switch children from forward-facing seats to boosters until they outgrew their harnessed seats, explaining ***"[i]t is important to note that every transition is associated with some decrease in protection; therefore, parents should be encouraged to delay these transitions for as long as possible."*** See *Policy Statement – Child Passenger Safety* (American Academy of Pediatrics 2011), attached as Exhibit G. On the same day, NHTSA released new guidelines that echoed the AAP's position. The Centers for Disease Control and Prevention was even more explicit, advising that "[a]fter outgrowing the rear-facing car seat, use a forward-facing car seat until at least age 5" and only switch to a booster seat "[a]fter outgrowing the forward-facing car seat." See *Child Passenger Safety* (Centers for Disease Control and Prevention), attached as Exhibit H.

19.    The public interest organization *ProPublica* issued a report on February 6, 2020 entitled "Evenflo, Maker of the 'Big Kid' Booster Seat, Put Profits Over Child Safety" ("*ProPublica* report"), https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety, which is attached as Exhibit I.

20.    The *ProPublica* report noted that "When Evenflo launched the Big Kid in the early 2000s … Evenflo told parents the Big Kid was safe for babies as young as 1 as long as they weighed 30 pounds or more. There was no minimum height." The *ProPublica* report added:

> Evenflo's engineers would later concede that 1-year olds don't belong in Big Kids. Joshua Donay, an Evenflo project engineer on the Big Kid, said in a 2016 deposition in a case in Duval County Circuit Court in Florida that he would "not put a 1-year-old in any belt-positioning booster, Big Kid, Graco, you name it." "I would keep them in an infant seat," added Donay, who left Evenflo in 2004. Dahle, the top Evenflo booster seat engineer, acknowledged in a deposition in a different case that not only should a 1-year-old never use the Big Kid, a 2-year-old shouldn't either.

> The engineers were reflecting the scientific consensus that booster seats don't adequately protect toddlers.

21.     Evenflo finally increased the minimum age for the "Big Kid" booster seats to 3 years old and added a minimum height of 38 inches, but still fell short of the AAP's position that children should stay in a car seat, not a booster seat, until at least 4 years old, and preferably until the child physically outgrows the car seat.

22.     The *ProPublica* report noted that as early as February 2012, Eric Dahle, a safety engineer at Evenflo, internally warned the Company to make a major change in its instructions for the use of booster seats, going so far as to recommend that Evenflo stop selling booster seats for children weighing less than 40 pounds.  Dahle pointed to a 2010 federal report on booster seat effectiveness, which "looked at a decade of crash data: that 3- and 4-year-old children had a reduced risk of injury in crashes when they were using harnessed seats rather than boosters and that early graduation to boosters may 'present safety risks.'"  Dahle also internally highlighted that children should remain harnessed until they are 4 or weigh 40 pounds and that harnessed seats may offer more side support and "better containment" for smaller children in crashes.   But his recommendation and, in effect, his warning, was repeatedly vetoed by a marketing executive, who wrote "Why are we even talking about this?" and stated, ***"I have looked at 40 lbs for the US numerous times and will not approve this."***  An excerpt of the email was included in the *ProPublica* report, as follows:

The latter statement was particularly noteworthy as a full fifteen years earlier in 1987, Canadian regulators had already established a minimum weight of 40 pounds for all booster seats, including Evenflo's, that are sold in Canada.

23.     Defendant eventually raised the minimum age limit for the "Big Kid" booster seat to 4 years old, but still claimed that it was safe for children weighing as little as 30 pounds. Moreover, Defendant continued to sell old models of the "Big Kid" booster seats with manuals dated 2008 that told parents and caretakers the seat was safe for 3-year olds. As a result, parents continued to buy, and use, "Bid Kid" booster seats for 3-year olds, with grievous results. And, Defendant never attempted to notify parents who had previously purchased a "Big Kid" booster seat of revised age or weight standards, even though Evenflo had the resources to do so by utilizing the information obtained when parents filled out warranty cards to register their purchases, as well as by placing notices on the Company's website and/or going back to the company's initial sales records.

24.     Not only did Evenflo ignore the warnings of its own safety engineer when it refused to limit sales for children under 40 pounds, it knowingly made material misstatements on its website and product packaging that its "Big Kid" booster seats were "side impact tested" and that those tests were rigorous, simulating realistic side-impact collisions. The booster seats included the following tags:





25. However, Evenflo omitted the crucial fact that, under any objective measure, the "Big Kid" booster seat – which failed to incorporate a five-point harness as part of the booster seat – failed side-impact tests that demonstrated that its use could cause children to suffer catastrophic trauma to the head, neck and spinal cord, resulting in serious injuries or death in side-impact collisions.

26.    Moreover, both the test results and the testimony in personal injury litigation brought against Evenflo established the real-life traumatic consequences of Defendant's actions, demonstrating that the "Big Kid" booster seats were and are woefully deficient in protecting vulnerable children in side-impact collisions, and their addition reflected a strategy designed to compete with Graco rather than ensure genuine safety.  In fact, in marketing materials sent to Walmart, Target and Babies R Us, Defendant emphasized in large bold letters that the top feature of the new "Big Kid" was that it was "Side Impact Tested."

27.    The *ProPublica* report was based, in part, on the fact that:

> ProPublica obtained multiple years of Evenflo's side-impact test videos, thousands of pages of sworn depositions of company employees and marketing materials that laid out the business objectives for the Big Kid that, until now, had mostly been shielded by secrecy orders in court cases around the country.  These records provide a rare window into one company's marketing and safety decisions.

28.    Graphic depictions of Evenflo's side-impact tests with dummies are included in the *ProPublica* report, which is incorporated by reference in this Complaint.  These include, but are not limited to, the following photos[2] demonstrating how Evenflo "Big Kid" boosters lacking a built in five-point harness failed to provide protection to children in side-impact collisions:

---

[2] All photographs with a "P" in a circle in the upper left hand corner are from the *ProPublica* article, although they may have been originally used in one of the personal injury cases relating to the "Big Kid" booster seat.



*Somoza v. Abbot*, Exhibit 361.013 (Feb.28, 2018).





29.     In fact, side-by-side tests confirmed that an Evenflo seat with an integrated five-point harness provides significantly greater protection in a side-impact collision compared to an Evenflo "Big Kid" booster seat lacking the five-point harness:



30.     In 2008, Defendant added "side wings" to the "Big Kid," as shown below:



31.    However, Defendant's own records confirm that these "wings" were added to "increase[] **perceived** side protection."  Moreover, Defendant's own testing showed that the new "Big Kid" booster seat with side wings **performed no better** than the old version of that booster seat, as graphically demonstrated by films of product testing showing of the "Big Kid" booster without side wings as well as the one with side wings.  Both showed that in a side-impact collision, either version of the "Big Kid" booster demonstrated the vulnerability of the head, neck and spine to serious injuries as seen below:





32.    This was also demonstrated in the statements of present and former Evenflo employees.  For example, Jeremy Belzyt, a senior test technician whose job involved crash testing boosters, reviewed various test films showing severe impact on test dummies.  Mr. Belzyt told

*ProPublica* that in 13 years at Evenflo, he never performed a side-impact test on a booster seat that was deemed a failure.  An excerpt from testimony and exhibits, as included in the *ProPublica* reports reads as follows:

**Rowe: I'm going to hand you — or I'm going to show you what has been marked Plaintiff's Exhibit 104A.**



**Rowe: Would you have marked dummy retention, yes?**

**Belzyt: Yes.**

Later, Rowe handed Belzyt a photo of another Evenflo test using a dummy modeled after a 6-year-old.

**Rowe: Here's Plaintiff's Exhibit 122A.**



**Rowe: Is that a dummy retention, yes?**

**Belzyt: Yes.**

Rowe later handed him a photo of another Evenflo test.



**Rowe: All right. And then Plaintiff's Exhibit 137A, is that a dummy**

**retention, yes?**

**Belzyt: Yes.**

**Rowe: And Plaintiff's Exhibit 138A, what would you answer for dummy**

**retention?**



**Belzyt: Yes.**

33.    Following the belated disclosure of Defendant's egregious conduct in the
*ProPublica* report, *ProPublica* issued another article on February 12, 2020 disclosing that the
Subcommittee on Economic and Consumer Policy of the House of Representatives Committee on
Oversight and Government Reform ("the House Oversight Subcommittee") is launching an
investigation into Evenflo's "product marketing and testing practices."  *ProPublica*, "House
Subcommittee Opens Investigation of Evenflo, Maker of 'Big Kid' Booster Seats" ("*ProPublica*
follow-up report").  The February 12, 2020 letter from the House Oversight Subcommittee to
Evenflo noted in the *ProPublica* follow-up report states in pertinent part:

> ProPublica recently reported that Evenflo's "Big Kid" seats are not safe for children
> under 40 pounds. Videos of Evenflo's side-impact tests for the "Big Kid" seat show
> child-sized test dummies bending violently at the hip, torsos, and neck, as well as
> test dummy heads being thrown to the side. This video evidence appears to
> represent high risk of serious injuries to the head, neck, and spine.
>
> Evenflo has marketed the "Big Kid" seat as safe and "Side Impact Tested." That
> safety representation appears to be inconsistent with the video evidence of side
> impact testing. In fact, your company's internal tests appear to show that side
> impacts could put children sitting in the "Big Kid" seat in grave danger.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

34.    Within the period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not, through the exercise of reasonable diligence, have discovered that Evenflo's "Big Kid" booster seat models are unsafe in side-impact crash tests.

35.    Plaintiff and the other members of the proposed classes did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Evenflo's" Big Kid" booster seat models are unsafe in side-impact crash tests, or that Evenflo's marketing of these seats as "side impact tested" was false and/or misleading.  The information revealing that the "Big Kid" booster seat models were unsafe was within Evenflo's sole possession, and was not known to the public until February 6, 2020, when *ProPublica* published its article reviewed above and attached as Exhibit I. To the extent some of the information reported by *ProPublica* was previously disclosed as part of any other litigation, it was either sealed by court order or behind a paywall, and thus not reasonably accessible to the public.

36.    Plaintiff and the members of the proposed classes could not have reasonably discovered the true extent of Evenflo's deception with regard to the safety of its "Big Kid" booster seats until publication of the *ProPublica* article.

37.    Accordingly, any and all applicable statutes of limitation have been tolled by operation of the discovery rule.

### Fraudulent Concealment Tolling

38.    All applicable statutes of limitation have also been tolled by Evenflo's fraudulent concealment of its internal testing throughout the period relevant to this action.

39.     Rather than publicly disclosing that its own testing demonstrated that children using its "Big Kid" booster seats are at risk of serious injury or death in side-impact crashes, Evenflo continued to manufacture, market and sell these seats without disclosing this critical information. Moreover, Evenflo affirmatively misrepresented the seats as "side-impact tested."

**Estoppel**

40.     Evenflo had an ongoing duty to disclose to Plaintiff and the other members of the proposed classes the risks of placing children in its "Big Kid" booster seats.

41.     Evenflo knowingly, affirmatively, and actively concealed or recklessly disregarded the true risks of placing children in these seats, while continuing to make affirmative public misrepresentations that the "Big Kid" booster seats were "side-impact tested."

42.     Accordingly, Evenflo is estopped from relying upon any and all statutes of limitations in defense of this action.

**CLASS ACTION ALLEGATIONS**

43.     Plaintiff brings this action on behalf of herself and as a class action, in accordance with Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following classes and subclass of all persons who purchased the "Big Kid" booster seat from 2008 to the present, for:

     a.    The California subclass, consisting of all persons who resided in the State of California at the time they purchased the booster seat;

     b.    The nationwide class, consisting of all persons who purchased the "Big Kid" booster seat under Counts One, Five, Six, and Seven; and

     c.    The multistate class, consisting of all persons residing in states other than California, as enumerated in Count Eight, at the time they purchased their booster seat.

44.    Excluded from the Class are Defendant, its corporate parent, any entity in which Defendant has a controlling interest, as well as its directors, officers, legal representatives, successors and assigns.

45.    Members of the class are so numerous and geographically dispersed that joinder of all members is impracticable.  During the Class Period, millions of Big Kid models were sold to millions of individual customers.  Class members are readily identifiable from information and records in the possession of Evenflo and third-party merchants like Amazon, Target, Walmart, Kmart, Costco, and Babies R Us.

46.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all Class members have been damaged by the same wrongful conduct as a result of Evenflo's failure to disclose the risks associated with using Big Kid booster seat models, as well as its false and misleading claims that these models were "side-impact tested."  Plaintiff and Class members were misled into purchasing these seats – which they otherwise would not have purchased.

47.    Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

48.    Plaintiff's counsel is experienced in the prosecution of class-action litigation, including class-action litigation involving defective products.

49.    Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Evenflo has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate.  Such generally applicable conduct is inherent in Evenflo's wrongful actions.

50.    Questions of law and fact common to the Class include, but are not limited to:

A.    Whether the "Big Kid" booster seat models sold to class members by Evenflo are unsafe in side-impact crashes;

B.    Whether Evenflo knew, or had reason to know, that its "Big Kid" booster seat models were unsafe in side-impact crashes;

C.    Whether Evenflo acted to conceal evidence from consumers, including its proprietary tests data and opinions of its safety engineer, among others, that the "Big Kid" booster seat models are unsafe in side-impact crashes;

D.    Whether Evenflo affirmatively misrepresented the safety of its "Big Kid" booster seat models as "side-impact tested";

E.    Whether Evenflo's conduct was knowing and willful;

F.    Whether Evenflo's failure to disclose the safety risks posed by use of its "Big Kid" booster seat in its product packaging and labeling (or elsewhere) was unfair, deceptive, fraudulent, or unconscionable;

G.    Whether Evenflo is liable to Plaintiff and Class members for damages or other relief under state consumer protection statutes;

H.    Whether an injunction should be issued requiring Evenflo to: (i) recall all "Big Kid" model booster seats still in use; (ii) allowing booster seat owners to return their seats to Evenflo for a full refund; (iii) cease selling "Big Kid" model booster seats; and/or (iv) add labeling to all future "Big Kid" model booster seats warning consumers of the dangers associated with their use; and

I.    Whether Plaintiff and Class members are entitled to attorneys' fees, prejudgment interest, and costs, and if so, in what amount.

51.    Plaintiff and Class members have all suffered harm and damages as a result of Evenflo's unlawful and wrongful action.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Rule 23(b)(3).  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism – including providing injured persons or entities a method for obtaining

redress on claims that could not practicably be pursued individually – substantially outweigh potential difficulties in management of this class action. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy at law.

52.    The class treatment of common questions of law and fact also is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficient of adjudication. Additionally, Evenflo has acted and failed to act on grounds generally applicable to Plaintiff and the Class and that require court imposition of uniform relief to ensure compatible standards of conduct toward the Class, thereby making appropriate equitable relief to the Class as a whole within the meaning of Rules 23(b)(1) and (b)(2).

53.    Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

54.    In the alternative, in the event that the Court does not grant class certification pursuant to Rules 23(a) and (b)(3) for a nationwide class or a multistate class, Plaintiff seeks certification pursuant to Rule 23(c)(4) with respect to particular liability issues, consisting of sub-paragraphs 50A-F, above. Even though various state laws may set the legal standards against which Defendant's conduct is to be judged, these issues will utilize the same operative evidence to establish liability. Certification on the particular liability issues satisfies Rule 23(c)(4)'s ascertainability and cohesiveness elements, *see, e.g., In re Suboxone*, MDL No. 2445, 2019 U.S. Dist. LEXIS 166524, *114-131 (E.D. Pa., Sept. 27, 2019), and should be granted in the alternative.

## COUNT ONE - IMPLIED OR WRITTEN WARRANTY UNDER MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, *et seq.*

55.    The averments of paragraphs 1-54 are incorporated as if fully set forth herein.

56.     Plaintiff brings this claim on behalf of the proposed nationwide class.

57.     Plaintiff is "consumer[s]" as defined by 15 U.S.C. § 2301(3).

58.     Evenflo is a "supplier" and "warrantor" as defined by 15 U.S.C. § 2301(4) and (5).

59.     Evenflo's "Big Kid" booster seats constitute "consumer product[s]" as defined by 15 U.S.C. § 2301(1).

60.     The amount in controversy of Plaintiff's individual claims meets or exceeds $25.00. In addition, the amount in controversy meets or exceeds $50,000 (exclusive of interest and costs) on the basis of all claims to be determined in this lawsuit.

61.     As set forth herein, Evenflo provided Plaintiff and the proposed class members both "written warrant[ies]" and "implied warrant[ies]" under 15 U.S.C. § 2301(6) and (7) concerning the fitness of the "Big Kid" booster seats as child safety restraints.  Moreover, a 2013 owner's manual provided with a" Big Kid" booster seat states that it can be used for children as small as 30 pounds, and thus constitutes part of the Magnuson-Moss limited warranty.

62.     As a matter of law, when Plaintiff and the members of the proposed classes bought their "Big Kid" booster seats, Evenflo's warranties about the fitness of the "Big Kid" booster seats constituted part of the benefit of the bargain.  In addition, Plaintiff and the members of the proposed classes were intended third-party beneficiaries of the contracts between Evenflo and its distributors, as they were intended to benefit Plaintiff and class members, not the distributors through whom Evenflo sold the "Big Kid" booster seats.

63.     Because the "Big Kid" booster seats provide only "perceived," not actual side-impact protection, and because the "Big Kid" booster seat is not fit for use for children under 40 pounds, Evenflo breached these warranties.

64.     Affording Evenflo a reasonable opportunity to cure its breach would be futile because Evenflo has denied that the "Big Kid" booster seats are defective.  In fact, Evenflo's representative told *ProPublica* that Evenflo has been a "pioneer" in side-impact testing that was claimed to have provided safe, effective, and affordable products.   Evenflo has not offered to refund or replace defective "Big Kid" boosters.

65.     Given Evenflo's egregious conduct concealing its product's defects, any attempt by Evenflo to disclaim the implied or written warranties it provided would be unconscionable, null, and void.

66.     Plaintiff and the members of the proposed classes have suffered concrete and particularized harm because of Evenflo's breach of those warranties.

67.     Plaintiff seeks all damages permitted by law, including a refund of the purchase price of the "Big Kid" booster seats.

### COUNT TWO - VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750-85)

68.     The averments of paragraphs 1-54 are incorporated as if fully set forth herein.

69.     This Count is asserted on behalf Plaintiff and the subclass consisting of consumers who were residents of California at the time they purchased the "Big Kid" booster seats from 2008 to the present.

70.     This claim is brought by Plaintiff and the members of the proposed California subclass against Evenflo on behalf of consumers who were residents of California at the time they purchased the "Big Kid" booster seats that are the subject of this action.

71.     The California Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a

transaction intended to result or that results in the sale or lease of goods or services to any consumer ...” Cal. Civ. Code § 1770.

72.     Evenflo is a “person” as defined in California Civil Code § 1761(c).

73.     Plaintiff and each proposed class member are “consumers,” as defined by California Civil Code § 1761(d), who purchased or leased one or more “Big Kid” booster seats.

74.     The “Big Kid” booster seats are “goods,” as that term is defined in California Civil Code § 1761(a).

75.     The purchases by Plaintiff and each member of the proposed California subclass of Evenflo’s “Big Boy” booster seats constituted a “transaction,” as that term is defined in California Civil Code § 1761(e).

76.     Evenflo’s conduct violates the following provisions of CLRA, Cal. Civ. Code § 1750, *et seq*, and Evenflo is directly liable for such violations:

   a.   California Civil Code § 1770(a)(5) by negligently, recklessly, and/or intentionally representing that the “Big Kid” booster seats have characteristics and qualities that they do not have;

   b.   California Civil Code § 1770(a)(7) by negligently, recklessly, and/or intentionally representing that the “Big Kid” booster seats were of a particular standard, quality or grade, when they were of another;

   c.   California Civil Code § 1770(a)(9) by negligently, recklessly, and/or intentionally advertising the “Big Kid” booster seats with intent not to sell them as advertised; and

d. California Civil Code § 1770(a)(16) by representing that the "Big Kid" booster seats have been supplied in accordance with previous representations when they have not been.

77.     Evenflo made numerous material statements about the testing for side-impact collisions undertaken by the Company that were either false or misleading. Each of these statements contributed to the deceptive context of Evenflo's unlawful advertising and representations as a whole.

78.     Evenflo knew that the "Big Kid" booster seat was defectively designed and/or manufactured, was not suitable for its intended use of safely protecting young children, and in the event of a collision, would subject its users, children, to the risk of serious, catastrophic injury, or even death. Defendant nevertheless represented that it had undertaken "doubly rigorous" side-impact testing of the "Big Kid" booster seat, even while failing to warn consumers and Plaintiff about such inherent danger despite having a duty to do so.

79.     Evenflo owed Plaintiff and the members of the California subclass a duty to disclose the risk of serious, catastrophic injury to vulnerable passengers in the event of a side-impact collision, because Evenflo:

a. Possessed exclusive knowledge of the defects rendering the "Big Kid" booster seats inherently more dangerous than was represented to consumers;

b. Intentionally concealed the hazardous situation with the "Big Kid" booster seats through its deceptive marketing campaign and any related program that it designed to hide the life-threatening problems from Plaintiff and members of the proposed California subclass; and/or

    c.   Made incomplete representations about the safety and reliability of the 'Big Kid" booster seats while purposefully withholding material facts from Plaintiff and the subclass members that contradicted these representations and intentionally concealed the hazardous situation.

80.    Evenflo's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff, about the true safety of the "Big Kid" booster seats.

81.    Whether or not the occupant of a "Big Kid" booster seat is exposed to the risk of a serious, catastrophic injury or even death in the event of a side-impact collision is a fact that a reasonable consumer would consider important in selecting a booster seat to purchase.  When Plaintiff and members of the proposed California subclass bought "Big Kid" booster seats for personal, family, or household purposes, they reasonably expected the "Big Kid" booster seats would provide substantial protection, as Evenflo indicated that its "doubly rigorous" tests supported, in the event of a side-impact collision.

82.    Evenflo's unfair or deceptive acts or practices were and are likely to, and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of the "Big Kid" booster seats.

83.    As a result of the violations of the CLRA detailed above, Evenflo caused actual damage to Plaintiff and the members of the proposed California subclass and, if not stopped, will continue to harm Plaintiff and members of the proposed California subclass.  Plaintiff and members of the California subclass currently own, or within the class period owned, a "Big Kid" booster seat that presents inherent risk to occupants in the event of a side-impact collision.

84.     Plaintiff and members of the proposed California subclass risk irreparable injury as a result of Defendant's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiff and members of the California subclass, as well as to the general public.

85.     Plaintiff, via counsel, has provided Evenflo with notice at its principal place of business in Miamisburg, Ohio, as of April 22, 2020, in compliance with California Civil Code § 1782 and satisfying California Civil Code § 1782(a).  Plaintiff currently seeks injunctive relief. After the 30-day notice period expires, Plaintiff will amend this complaint in order to demand and recover monetary damages under the CLRA.

86.     Evenflo's fraudulent and deceptive practices directly and proximately caused harm to Plaintiff and the members of the proposed California subclass, and that harm will continue unless Evenflo is enjoined from using the misleading labels, packaging, statements and representations set forth herein in any manner in connection with the advertising and sale of the "Big Kid" booster seats.

87.     Plaintiff seeks equitable relief and an order enjoining Defendant's unfair or deceptive acts or practices under California Civil Code § 1780(a), including enjoining Evenflo from the acts and/or practices alleged herein and requiring Evenflo to either (a) recall all "Big Kid" booster seats and cease selling and marketing "Big Kid" booster seats, and/or (b) provide consumers with adequate and accurate disclosure of the inherent risks to occupants of "Big Kid" booster seats in the event of a side-impact collision.

88.     Plaintiff seeks an award of attorneys' fees pursuant to, *inter alia*, California Civil Code § 1780.

**COUNT THREE- VIOLATION OF CALIFORNIA FALSE ADVERTISING ACT –
BUSINESS & PROFESSIONS CODE §§ 17500, *et seq.***

89.     The averments of paragraphs 1-54 are incorporated as if fully set forth herein.  This
Count is asserted on behalf Plaintiff and the subclass consisting of consumers who were residents
of California at the time they purchased "Big Kid" booster seats from 2008 to the present.

90.     Evenflo engaged in unfair and deceptive advertising, in violation of California
Business and Professions Code § 17500, *et seq.*, as alleged herein.

91.     These acts and practices have deceived Plaintiff and members of the California
subclass, causing them to lose money by purchasing Evenflo's product or paying more for it than
they otherwise would, as herein alleged, and have deceived and are likely to deceive the consuming
public. Accordingly, Evenflo's business acts and practices caused injury to Plaintiff and the
California subclass.

92.     Plaintiff and the members of the California subclass would not have purchased
Evenflo's product or would not have paid a price premium for it but for Defendant's
misrepresentations.

93.     Plaintiff and the members of the California subclass are entitled to relief, including
full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits
which may have been obtained by Evenflo as a result of such business acts or practices, and
enjoining Evenflo from engaging in the practices described herein.

**COUNT FOUR - VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION
LAW – BUSINESS & PROFESSIONS CODE §§ 17200, *et seq.***

94.     The averments of paragraphs 1-54 are incorporated as if fully set forth herein.  This
Count is asserted on behalf Plaintiff and the subclass consisting of consumers who were residents
of California at the time they purchased "Big Kid" booster seats from 2008 to the present.

95.     Section 17200 of the California Business and Professions Code bars any "unfair deceptive, untrue or misleading advertising" and further prohibits any "unlawful, unfair or fraudulent business act or practice."   Evenflo has engaged in unfair, deceptive, untrue and misleading advertising in violation of the California Business & Professions Code §§ 17200, *et seq.* by, *inter alia*, making misstatements and omissions of material fact, including:

    a.     Misrepresenting that "Big Kid" booster seats were safe for children weighing as little as 30 pounds at the same time that Evenflo knew that the "Big Kid" booster was unsafe for children weighing less than 40 pounds and, in fact, warned Canadian consumers that a child less than 40 pounds risked "serious injury or death" using the same "Big Kid" booster;

    b.     Misrepresenting that "Big Kid" booster seats were "side impact tested" and afforded children side-impact protection without revealing that its own tests showed a child seated in its "Big Kid" booster could be in serious danger in a side-impact collision;

    c.     Misrepresenting that Evenflo's "rigorous test simulates the government side-impact tests conducted for automobiles" and that its tests even "go beyond the current government standards," when in fact the government does not have any side-impact standards; and

    d.     Misrepresenting that the "Big Kid" booster was safe and that using the "Big Kid" booster was the best way to minimize injuries to your child.

96.     Evenflo's acts, misrepresentations, omissions, and other practices or nondisclosures also constitute deceit under the provision of Cal. Civ. Code § 1710 prohibiting

"[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."

97.    Evenflo's acts, omissions, misrepresentations, and other practices or non-disclosures also constitute a violation of the prohibition of fraudulent acts and practices, pursuant to Business & Professions Code §§ 17200, *et seq.*

98.    Evenflo's acts, omissions, misrepresentations, and other practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq.* in that Evenflo's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers.  There were reasonable alternatives available to further Evenflo's legitimate business interests other than the conduct described herein.  This conduct constitutes violations of the "unfair" prong of California Business & Professions Code §§ 17200, *et seq.*

99.    Evenflo's conduct also constitutes a breach of warranty as set forth above.  Because Evenflo breached express warranties to Plaintiff and members of the California subclass, Evenflo also violates California Commercial Code §2313.

100.    Evenflo's unfair business practices and conduct constituted the immediate and proximate cause of damages suffered by Plaintiff and the members of the California subclass.

101.    Evenflo's unfair business practices and conduct described herein caused Plaintiff and the members of the California subclass to buy or pay more for Evenflo's product.

102.     Evenflo's misrepresentations and omissions caused Plaintiff and the members of the California subclass actual damages because had they known the truth about Evenflo's product, they would not have purchased it or paid as much for it.

103.     Evenflo's conduct caused and continues to cause substantial injury to Plaintiff and the other members of the California subclass, who have suffered injury in fact and have lost money as a result of Evenflo's wrongful conduct.

104.     Pursuant to Business & Professions Code § 17203, Plaintiff and the other members of the California subclass seek an order requiring Evenflo to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Evenflo to engage in a corrective advertising campaign and other corrective conduct as necessary and proper.

105.     Unless Evenflo is enjoined from continuing to engage in these unfair, unlawful, and fraudulent business practices, Plaintiff, and the public, will continue to be injured by Evenflo's actions and conduct.

106.     Evenflo has thus engaged in unlawful, unfair, and fraudulent business acts and practices, entitling Plaintiff and the other members of the California subclass to judgment and equitable relief against Evenflo, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Evenflo as a result of such business acts or practices, and enjoining Evenflo from engaging in the practices described herein.

**COUNT FIVE - BREACH OF EXPRESS WARRANTIES**

107.     The averments of paragraphs 1-54 are incorporated as if fully set forth herein.  This Count is asserted on behalf Plaintiff and the nationwide class who purchased "Big Kid" booster seats from 2008 to the present.

108.    Alternatively, Plaintiff brings this claim against Evenflo on behalf of herself, and the California subclass consisting of consumers who were residents of California at the time they purchased "Big Kid" booster seats from 2008 to the present.

109.    Evenflo made express warranties and representations regarding the "Big Kid" booster seats when it represented:

    a.    "Big Kid" booster seats were safe for children who weigh as little as 30 pounds;

    b.    "Big Kid" booster seats were "side impact tested" and provided side-impact protection;

    c.    Evenflo's "rigorous test simulates the government side- impact tests conducted for automobiles" or that its tests even "go beyond the current government standards"; and

    d.    Evenflo products, including the "Big Kid" booster, were generally safe and that using the "Big Kid" booster was "the best way to minimize injuries to your child."

110.    These misrepresentations were made directly to consumers and end purchasers of Evenflo's "Big Kid" booster seats, constitute express warranties, and became part of the basis of the bargain between the parties and created a collective "express warranty" that the "Big Kid" booster seat would conform to Evenflo's affirmations and promises.

111.    Evenflo breached express warranties about the "Big Kid" booster seat and its qualities because Evenflo's statements about the "Big Kid" booster seats were false and the product does not conform to Evenflo's affirmations and promises.

112.    Plaintiff and the members of the classes would not have purchased the "Big Kid" booster seats had they known about the misrepresentations.

113.    Evenflo's conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia.

114.    As a result of Evenflo's breach of warranty, Plaintiff and each member of the classes have been damaged in an amount equal to the value of the "Big Kid" booster seat and/or in an amount to be determined at trial plus any consequential damages resulting from their purchases.

115.    Plaintiff and the classes did not need to send notice to Evenflo of its breaches of warranty because Evenflo was already on notice of the defects alleged herein.  In fact, Evenflo is already facing similar lawsuits for the alleged conduct.

## COUNT SIX - BREACH OF IMPLIED WARRANTIES

116.    The averments of paragraphs 1-54 are incorporated as if fully set forth herein.  This Count is asserted on behalf Plaintiff and the subclass consisting of consumers who were residents of California at the time they purchased "Big Kid" booster seats from 2008 to the present.

117.    Alternatively, Plaintiff brings this claim against Evenflo on behalf of herself and the nationwide class.

118.    Evenflo is in the business of manufacturing, supplying, marketing, advertising, warranting, and selling "Big Kid" booster seats.  Evenflo impliedly warranted to Plaintiff and class members that the "Big Kid" booster seat was of a certain quality and was fit for its ordinary and particular purpose.

119.     Evenflo's implied warranties included, but are not limited to, warranties that the "Big Kid" booster seats were safe for children who weigh as little as 30 pounds; were "side impact tested" and provided side-impact protection; and were generally safe and that using the "Big Kid" Booster was "the best way to minimize injuries to your child.

120.     Evenflo's "Big Kid" Booster was unfit for its ordinary use and was not of merchantable quality and/or did not conform to the promises or affirmations of fact.  Prior to purchase, Plaintiff and the class members could not have discovered that the product was not fit for its ordinary purpose and did not conform to the quality previously represented.

### COUNT SEVEN - VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT, Ohio Rev. Code Ann. §§ 4165.01, *et seq.*

121.     The averments of paragraphs 1-54 are incorporated as if fully set forth herein.  This Count is asserted on behalf Plaintiff and a class consisting of all purchasers of the "Big Kid" booster seat from 2008 to the present.

122.     The Ohio Deceptive Trade Practices Act, Ohio Rev. Code Ann. §§ 4165.01, *et seq.* (the "DTPA"), states in relevant part that "A person who is injured by a person who commits a deceptive trade practice that is listed in division (A) section 4165.02 of the revised Code may commence a civil action to recover actual damages from the person who commits the deceptive trade practice." *Id.* § 4165.03(A)(2).  Division (A) section 4165.02 provides that a person "engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following: … (2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7)  Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (9) Represents that goods or services are of a

particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; ….."  Division (B) section 4165.02 states: "In order to prevail in a civil action under § 4165.03 of the Revised Code that seeks injunctive relief or an award of damages and that is based on one or more deceptive trade practices listed in division (A) of this section, a complainant need not prove competition between the parties to the civil action."  *See also Bower v. IBM*, 495 F. Supp. 2d 837, 842-44 (S.D. Ohio 2004) (Rice, J.) (upholding claim brought by purchaser of IBM product under the DTPA).  By representing, on its webpage, on the product package and in the product manual or inserts that the "Big Kid" booster seat was "side-impact tested" and subject to testing twice as demanding as the government's standards, whereas in reality there was no applicable government standard for side-impact protection and Evenflo's own tests and testimony in personal injury litigation demonstrated that the "Big Kid" booster seats did not protect occupants from anticipated side-impact collisions and exposed vulnerable infants and children to traumatic head, neck, spine and other injuries entailing serious injury or even death, Defendant knowingly and intentionally made material misrepresentations of and actionable concealments of material facts, in violation of the DTPA.

123.    Plaintiff and all other purchasers of "Big Kid" booster seats suffered ascertainable loss caused by Evenflo's material misrepresentations and actionable concealment of material facts.

124.    The proposed class is entitled to damages or other appropriate legal or equitable relief, pursuant to the DTPA.

**COUNT EIGHT – VIOLATION OF OTHER STATES' CONSUMER PROTECTION STATUTES**

125.    The averments of paragraphs 1-54 are incorporated as if fully set forth herein.  This Count is asserted on behalf the nationwide class consisting of purchasers of the "Big Kid" booster seat in other enumerated States from 2008 to the present.

126.    Evenflo had a statutory duty to refrain from unfair or deceptive acts or practices in the design, manufacture, marketing and sale of its "Big Kid" booster seats.

127.    If Evenflo had not engaged in deceptive acts or practices described herein, Plaintiff and the multi-state class members would not have purchased Defendant's "Big Kid" booster seats.

128.    Evenflo's deceptive, unconscionable or fraudulent representations and material omissions to consumers and the public, including Plaintiff, constituted unfair and deceptive acts and practices in violation of the state consumer protection statues listed below:

      a.      Alaska Stat. § 45.50.471, *et seq.*;

      b.      Ariz. Rev. Stat. § 44-1522, *et seq.*;

      c.      Ark. Code. § 4-88-101, *et seq.*;

      d.      Colo. Rev. Stat. § 6-1-105, *et seq.*;

      e.      Conn. Gen. Stat. § 42-110a, *et seq.*;

      f.      6 Del. Code §§ 2511, *et seq.* and 2531, *et seq.*;

      g.      D.C. Code § 28-3901, *et seq.*;

      h.      Fla. Stat. § 501.201, *et seq.*;

      i.      Haw. Rev. Stat. § 480.1, *et seq.*;

      j.      Idaho Code § 48-601, *et seq.*;

      k.      815 ILCS §505/1, *et seq.*, and 511/15;

      l.      Kan. Stat. § 50-623, *et seq.*;

      m.      Ky. Rev. Stat. § 367.170, *et seq.*;

      n.      La. Rev. Stat. § 51:1401, *et seq.*;

      o.      Md. Com. Law Code § 13-301, *et seq.*;

      p.      Mich. Comp. Laws Ann. § 445.90 1, *et seq.*;

q.    Minn. Stat. §§ 325D.01, *et seq*., 325F.67, and 325F.68 *et seq*.;

r.    Vernon's Ann. Missouri Stat. § 407.010, *et seq*.;

s.    MT Code § 30-14-101, *et seq*.;

t.    Neb. Rev. Stat. § 59-1601, *et seq*.;

u.    Nev. Rev. Stat. Ann. § 598.0903, *et seq*.;

v.    N.H. Rev. Stat. § 358-A:1, *et seq*.;

w.    56 N.J Stat. § 8-1, *et seq*.;

x.    N.M. Stat. § 57-12-1, *et seq*.;

y.    N.Y. Gen. Bus. Law §§ 349 *et seq*., and 350-a, *et seq*.;

z.    N.C. Gen. Stat. § 75-1.1, *et seq*.;

aa.    N.D. Cent. Code §§ 51-12-01, *et seq*., and 51-15-01, *et seq*.;

bb.    Ohio Rev. Code § 1345.01, *et seq*.;

cc.    15 Okla. Stat. § 751, *et seq*.;

dd.    Or. Rev. Stat. § 646.605, *et seq*.;

ee.    73 Pa. Stat. § 201-1, *et seq*.;

ff.    R.I. Gen. Laws. § 6-13.1-1, *et seq*.;

gg.    S.C. Code Laws § 39-5-10, *et seq*.;

hh.    S.D. Codified Laws § 37-24-1, *et seq*.;

ii.    Tenn. Code Ann. § 47-18-101, *et seq*;

jj.    Utah Code. Ann. § 13-11-1, *et seq*.;

kk.    9 Vt. § 2451, *et seq*.;

ll.    Va. Code § 59.1-196, *et seq*.;

mm.    Wash. Rev. Code § 19.86.010, *et seq*.; and

nn.     Wis. Stat. § 100.20, *et seq*.

129.    Plaintiff and members of the class relied upon Evenflo's misrepresentations and/or omissions in buying their "Big Kid" model booster seats.

130.    Plaintiff will provide any required notice to appropriate entities regarding Evenflo's unfair and deceptive trade practices.

131.    For purposes of prior notice under Ohio Rev. Code § 1345.01, *et seq.*, Evenflo's conduct was deceptive and unconscionable as declared by either a state court holding or rule adopted by the Ohio Attorney General, including Ohio Administrative Code §§ 109:4-3-10(A), 109:4-3-02(A)(1), and 109:4-3-03(B)(1).

132.    As a direct and proximate result of Evenflo's wrongful conduct, Plaintiff and class members have been damaged by their purchase of "Big Kid" model booster seats.

133.    As a direct and proximate result of Evenflo's wrongful conduct, Plaintiff and the class are entitled to compensatory damages, treble damages, attorneys' fees and cost of this suit.

## REQUEST FOR RELIEF

134.    Plaintiff, on behalf of herself and the proposed classes, respectfully requests that judgment be entered in favor of Plaintiff and the classes and against Defendant providing the following relief, as appropriate under the laws governing each respective count:

a.     Certifying this as a class action, pursuant to Fed.R.Civ.P. 23(b)(3), appointing Plaintiff as a class representative, and approving her selection of lead counsel for the class;

b.     Declaring that Defendant's failure to disclose the dangers associated with the "Big Kid" booster seats constituted an unfair, deceptive, fraudulent, wrongful and unlawful practice;

c.      Ordering Defendant to promptly provide full and effective notice in plain English of the continuing dangers associated with the use of the "Big Kid" booster seats;

d.      Awarding restitution for all "Big Kid" booster seats purchased by Plaintiff and the class;

e.      Ordering disgorgement of the ill-gotten gains obtained as a result of Defendant's wrongful conduct;

f.      Awarding the full measure of damages on each applicable count, including actual, statutory, multiple, exemplary or punitive damages, as permitted;

g.      Ordering Defendant to provide appropriate notice and affording all Class members the opportunity to return or replace their "Big Kid" booster seats, in exchange for a full refund of all purchase costs, including applicable taxes and shipping charges;

h.      Issuing a permanent injunction requiring Defendant to: (i) recall all "Big Kid" booster seats still in use for children less than 4 years old or weighing less than 40 pounds; (ii) cease selling all "Big Kid" booster seats; and (iii) provide prominent, adequate and clear notice in plain English of all "Big Kid" booster seats and all packaging and manuals or inserts warning of the dangers associated with its use and the importance of not moving children from car seats to booster seats until absolutely necessary;

i.      Awarding costs, reasonable counsel and expert fees;

j.      Awarding pre- and post-judgment interest at the maximum rate permitted by law; and

k.    Providing such additional or different relief as the interests of law or equity

may require.

## DEMAND FOR JURY TRIAL

135.    Plaintiff demands a trial by jury of all issues so triable.

Dated:  April 27, 2020                    Respectfully submitted:

*/s/ James B. Helmer, Jr.*
James B. Helmer, Jr.
B. Nathaniel Garrett
**Helmer, Martins, Rice & Popham Co., L.P.A.**
600 Vine Street, Suite 2704
Cincinnati, OH 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
jhelmer@fcalawfirm.com
ngarrett@fcalawfirm.com

and

**Barrack, Rodos & Bacine**
Mark R. Rosen (*pro hac vice* to be filed)
Jeffrey W. Golan
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
mrosen@barrack.com
jgolan@barrack.com

Stephen R. Basser (*pro hac vice* to be filed)
Samuel M. Ward (*pro hac vice* to be filed)
One America Plaza
600 W. Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile: (619) 230-1874
sbasser@barrack.com
sward@barrack.com

and

**Bonnett Fairbourn Friedman & Balint, P.C.**
Patricia N. Syverson (*pro hac vice* to be filed)
600 W. Broadway, Suite 900
Telephone: (602) 274-1100
Facsimile: (602) 274-1199
psyverson@bffb.com

Elaine A. Ryan (*pro hac vice* to be filed)
Carrie A. Laliberte (*pro hac vice* to be filed)
2325 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
Telephone: (602)-274-1100
Facsimile: (602) 274-1199
eryan@bffb.com
claliberte@bffb.com

*Attorneys for Plaintiff*